348 So.2d 349 (1977)
America BALINO et al., Petitioners,
v.
The DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES of the State of Florida, et al., Respondents.
No. EE-62.
District Court of Appeal of Florida, First District.
July 11, 1977.
Stephen Maher, Legal Services of Greater Miami, Inc., Miami, for petitioners.
Chester G. Senf, Jacksonville, for respondents.
ERVIN, Judge.
The issue before us is who has the burden of proof at a reclassification hearing, the recipients of Medicaid benefits seeking continued assistance, or the Department of Health and Rehabilitative Services? We agree that the burden should be placed upon the Department and reverse.
*350 Petitioners are elderly Medicaid recipients residing in Florida nursing homes. In September, 1975, the Secretary of the Department of Health, Education and Welfare promulgated regulations setting forth new and more restrictive criteria which Medicaid recipients must meet in order to receive skilled nursing care. 45 C.F.R. 405.126-.128. In complying with the new regulations, the Department of Health and Rehabilitative Services then made changes in its level of care definitions. Fla. Admin. Code Rule 10C-7.21. HRS also undertook a massive state-wide reclassification of skilled care nursing home patients.
HEW's regulations provide in those cases where the state intends to discontinue, suspend or reduce assistance, it shall first give timely and adequate notice of such intention. 45 C.F.R. 205.10(a)(4). It is also provided that before discontinuing such benefits, an opportunity for a "fair" hearing shall be granted to any applicant who requests a hearing. 45 C.F.R. 205.10(a)(5). Here, after HRS provided such notice, a single group hearing was held before a hearing officer with the petitioners' consent. Following the hearing an order was entered by the hearing officer which, as it pertained to the burden of proof, stated:
"The State has the burden of proof at the hearing. Although Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), does not speak directly to this issue, it does require a fair and meaningful opportunity, under the circumstances, for a client to be heard and to challenge agency decision-making. Given the status of petitioners in these cases, i.e., nursing home residents incapable of caring for themselves, and given the presence of doctors, nurses and social workers on the medical review teams which are recommending the reclassifications, it should not constitute an undue burden to require respondents to sustain the burden of proof. As a practical matter, this simply means that respondents have to establish the grounds for reclassification, by a preponderance of the evidence, to the satisfaction of the hearing officer."
The Secretary of HRS rejected the hearing officer's recommended order as to the burden of proof, stating:
"The Petitioners have the burden of proof at the hearing as Federal law requires that Medicaid recipients prove eligibility."
At the outset we must disagree with the Secretary's conclusion that federal law requires such recipients to prove continued eligibility. This may be a correct interpretation of a recipient's burden necessary to establish initial eligibility under appropriate federal regulations, 45 C.F.R. Sections 405.126-.128, but we have been cited to no federal statutes or federal regulations which require such recipients, once so classified, to have thrust upon them the burden of proof as to their continued eligibility. The general rule is, that as in court proceedings, the burden of proof, apart from statute, is on the party asserting the affirmative of an issue before an administrative tribunal. State Department of Agriculture and Consumer Services v. Strickland, 262 So.2d 893 (Fla. 1st DCA 1972); Florida Dept. of Health and R.S. v. Career Serv. Com'n, 289 So.2d 412 (Fla. 4th DCA 1974); Fitzpatrick v. City of Miami Beach, 328 So.2d 578 (Fla. 3rd DCA 1976). Florida's Administrative Procedure Act is silent on the subject, although its federal counterpart is essentially the same as Florida decisional law. 5 U.S.C. § 556(d).
There is an even more compelling reason why the burden should be placed upon HRS. The hearing officer made an explicit finding of fact, not rejected by the Secretary's final order,[1] that petitioners were "nursing home residents incapable of caring for themselves, ... ." This finding has not been challenged by HRS on review and it comes before us clothed with a presumption of correctness. Hayes v. Bowman, 91 So.2d 795 (Fla. 1957); Florida Rate Conf. v. Florida Railroad & P.U. Com'n., 108 So.2d 601 (Fla. 1959); O'Neil v. *351 Pallot, 257 So.2d 59 (Fla. 1st DCA 1972). Such being the case, the guidelines set forth in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), are appropriately applicable to this cause. The federal regulations pertaining to hearings specifically require they shall be conducted pursuant to "the due process standards set forth ... in Goldberg v. Kelly. ..." 45 C.F.R. 205.10(a)(1)(ii).
In Goldberg, residents of New York City who were receiving financial aid under state or federally assisted welfare programs brought actions alleging that welfare officials had either terminated or were about to terminate such aid without prior notice and hearing in violation of due process. After the commencement of the actions, welfare authorities adopted procedures whereby a recipient was given notice of the proposed termination of payments, and a right to have the proposed termination reviewed by a higher official as well as the right to submit a written statement for purposes of review.
The United States Supreme Court held that procedural due process required that such recipients be afforded an evidentiary hearing before the benefits were ended.[2] True, Goldberg did not explicitly state that at such pre-termination hearings the burden would be upon the agency seeking to discontinue benefits, but such a conclusion is by inference inescapable:
"In the present context these principles [pertaining to one's right to a fair hearing] require that a recipient have . . an effective opportunity to defend by confronting any adverse witnesses... ." 397 U.S. at 267-268, 90 S.Ct. at 1020. (Emphasis added).
Certainly one who defends a position cannot at the same time be described as having the affirmative of that position.
Moreover Goldberg recognized the "opportunity to be heard must be tailored to the capabilities and circumstances of those who are to be heard." 397 U.S. 268-269, 90 S.Ct. 1021. Since as Goldberg observed, written submissions for continued family aid "are an unrealistic option for most recipients, who lack the educational attainment necessary to write effectively . .", 397 U.S. 269, 90 S.Ct. 1021, is the option which is available to nursing home residents who are incapable of caring for themselves any more realistic when the burden is placed upon them at such hearings?
The hearing officer concluded that it would not be an undue burden for HRS to sustain the burden of proof in view of the agency's medical review teams, consisting of doctors, nurses and social workers, who recommend the reclassifications. This conclusion appears entirely justified. HEW's regulations provide detailed procedures relating to periodic evaluations of the patients' conditions by medical review teams. 45 C.F.R. 250.23-.24. The final order of HRS specifically states that the reclassifications will be done by teams which have reviewed the recipient's medical records, although one member of the team must also have observed the recipient. Considering the superior resources available to the agency, it is hardly consistent with fundamental concepts of fairness to impose upon those *352 who have been found incapable of caring for themselves the burden of the preponderance of the evidence at such reclassification hearings.
This cause is remanded to HRS with directions that it amend its final order by adopting the hearing officer's recommended order placing the burden of proof upon the agency at such hearings.
BOYER, Acting C.J., and MILLS, J., concur.
NOTES
[1] He could have determined, after reviewing the complete record, that such finding was not based upon competent substantial evidence. Section 120.57(1)(b)(9), Fla. Stat. (Supp. 1976).
[2] The procedural requirements set forth in Goldberg were later held by the Court not to apply to recipients of disability benefits under the Social Security Act prior to termination of such benefits. Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Court also stated that such a recipient bears the continuing burden of eligibility. 424 U.S. at 336, 96 S.Ct. 893. The Eldridge opinion was careful to point out differences in the facts before it and those in Goldberg. A major distinction being that the degree of deprivation in Goldberg was much greater than the termination of disability benefits in Eldridge. Petitioners persuasively argue that there is a significant distinction in procedures pertinent to disability benefits as opposed to Medicaid benefits since Title II of the Social Security Act, pertaining to disability benefits, places the continuing burden on the recipient, 42 U.S.C. § 423 (d)(5), whereas there is no similar provision under Title XIX pertaining to Medicaid benefits. Notwithstanding the distinctions between Mathews and Goldberg, the Secretary of HEW has by regulation specifically required the procedures outlined in Goldberg to apply to reclassification hearings involving Medicaid recipients. Obviously the parties are bound by those procedures.