934 So.2d 1 (2005)
C.F., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 3D04-1147.
District Court of Appeal of Florida, Third District.
December 28, 2005.
Rehearing and Rehearing Denied August 10, 2006.
Lizel Gonzalez; and Miriam Harmmatz; and Anne Swerlick, for appellant.
*2 Charles J. Christ, Jr., Attorney General, and Charles M. Fahlbusch, Assistant Attorney General, for appellee.
Before LEVY, GREEN, and RAMIREZ, JJ.
Rehearing and Rehearing En Banc Denied August 10, 2006.
RAMIREZ, J.
C.F. appeals the final agency decision of the Department of Children and Families' Office of Appeal Hearings, affirming the decision of the Department of Children and Families to reduce Medicaid-funded personal care assistance for C.F. from six to four hours per day and finding that the request exceeded medical necessity or that there was no determination that the services were medically necessary. We reverse and remand, finding that the hearing officer applied overly restrictive definitions of "medical necessity" and "personal care assistance" and the Department failed to meet its burden of proof for reducing C.F.'s personal care assistance services from six to four hours per day.

FACTUAL AND PROCEDURAL BACKGROUND
At the time of the Department's decision, C.F. was a nine-year-old boy with severe disabilities, including mental retardation, hyaline membrane disease (a form of brain damage), bronchopulmonary dysplasia, gastroesophageal reflux, retinopathy, asthma, glaucoma in the left eye, and attention deficit hyperactivity disorder.[1] C.F. lives with his mother and sister, both of whom the Social Security Administration found to be disabled.
C.F. receives Medicaid coverage for the following therapies: language, speech, physical, occupational, and psychological. Medicaid also covers his tutoring. He is treated by a pulmonologist, infectious disease specialist, gastrointestinal specialist, nephrologists, two neurologists, and an opthalmologist. C.F.'s pediatrician coordinates his care.
As a Medicaid recipient under twenty-one years of age, C.F. is eligible for Early and Periodic Screening, Diagnosis and Treatment Services ("EPSDT"), a comprehensive benefit for all Medicaid-eligible children which includes necessary health care treatment and other treatments to correct physical and mental conditions whether or not such services are covered under the state Medicaid plan for adults. C.F. has also been enrolled in the Medicaid-funded Home and Community Based Developmental Services waiver program since November 1, 1999. He receives personal care assistance ("PCA") services, six hours per day, seven days per week, as part of his waiver services.
C.F. cannot bathe, brush his teeth or feed himself without assistance. His personal care assistant helps him with these functions. During the day, C.F. can use the bathroom unattended. During the night, he wears a diaper. His personal care assistant changes his diapers. C.F.'s personal care assistant also picks him up at school with his mother and then drives him to multiple weekly therapies, including physical and occupational therapy and psychiatrist and tutoring sessions, because his mother's sleep apnea prevents her from driving. The personal care assistant participates in the therapies as they require the participation of an adult caretaker, which C.F.'s mother is unable to do because of her disabilities, including sleep apnea and depression. C.F. is then driven back home. C.F.'s long-time treating physician provided the Department with medical evidence that all of the services C.F. receives, which include the six hours per *3 day of personal care assistance, are medically necessary.
To reduce the Developmental Services waiver costs, the Department contracted with Maximus, Inc., a private, for-profit entity that evaluates services for eligible recipients, to review the waiver files to determine whether certain prescribed services, including the PCA services, met the state's definitions of those services and "medical necessity," according to the Florida Administrative Code and the Developmental Services Waiver Services Florida Medicaid Coverage and Limitations Handbook, July 2002. See Fla. Admin. Code R. 59G-1.010(166) and Developmental Services Waiver Services Florida Medicaid Coverage and Limitations Handbook, July 2002, incorporated by reference in Fla. Admin. Code R. 59G-8.200(12). C.F.'s file was selected for review, and the Department proposed reducing his PCA services from six to four hours per day. Although according to his treating physician, C.F.'s condition had not improved and his needs had not diminished, Maximus concluded that C.F.'s assistance needs could be adequately completed in four hours per day. This amount was approved as medically necessary. The Maximus reviewer applied the Department's definition of "medical necessity" and "PCA services" in making her determination, which contradicted the opinion of C.F.'s treating physician.
Accordingly, on June 24, 2003, the Department reduced the amount of personal care assistance as a Development Disabilities Medicaid Waiver service for C.F. from six hours per day to four hours per day. C.F. appealed the decision to the Department's Office of Appeal Hearings.
In March 2004, an administrative hearing was held. The Department employee responsible for the waiver testified that personal care assistance can be provided through Medicaid. The Maximus consultant reviewer, Dr. Emma Guillarte, who has a doctorate in special education, also testified telephonically at the hearing. She stated that she reviewed C.F.'s file to document the medical necessity for the service. She used the Developmental Services Waiver Services Medicaid Coverage and Limitations Handbook, which defined personal care assistance. Dr. Guillarte stated that the Handbook defined personal care assistance "as a service that assists a beneficiary with eating, meal preparation, bathing, dressing, personal hygiene and activities of daily living." The service also included activities such as assistance with meals, preparation, bed making, vacuuming, when these activities are essential to the health and welfare of the beneficiary and when no on else was available to perform them. Dr. Guillarte further quoted the Handbook stating, "[p]ersonal care assistance in the family home should be provided only to assist the parent or primary caregiver of children in meeting the personal care needs of the child." She found that personal care assistance was being used to transport C.F. to his different services or therapies, which was not allowed by the developmental disabilities Medicaid waiver. Furthermore, there were several hours where the personal assistant was being used for laundry, cleaning, helping him to get ready, supervising him at church, which were not personal care activities. Thus, she recommended that his hours be reduced from six to four.
Dr. Guillarte testified that she is not a licensed health care provider. She never examined C.F. She never spoke to C.F.'s mother or any of C.F.'s doctors, nor did she make any request for information regarding C.F. or his mother's medical condition. She made her recommendation to reduce C.F.'s PCA hours solely upon a *4 "desk review" of C.F.'s DS waiver support plan and cost plan.
Adela Fiallo, C.F.'s mother, testified that the transportation was necessary to get C.F. to his therapy appointments and that no other transportation services were available or offered. She explained that a personal care assistant was necessary when C.F. was attending a therapy session because C.F. needed assistance with his personal care needs during the time he is going to and from the therapies and during the therapies themselves. The centers where C.F. receives treatment do not allow patients who are minors to be dropped off; a guardian must be present at all times. Mrs. Fiallo testified that while she occasionally is able to go to a therapy session, she stated that without a personal care attendant, C.F. could not participate in his therapies. C.F.'s mother also testified about her own medical conditions, including morbid exogenous obesity and obstructive sleep apnea with very pronounced daytime somnolence that prevents her from driving. Dr. Guillarte admitted that she did not take the mother's medical conditions into consideration when she decided whether the mother could transport C.F.
The Department argued that other types of transportation were available to C.F. However, C.F.'s mother testified that these options were not feasible for C.F. For example, C.F. cannot use school transportation because the school will only transport him to and from school, not to the therapies. Also, C.F. must leave school before the end of the school day to attend his therapies. The school transportation does not allow for transportation before the end of the school day. In addition, the Department employee who testified at the hearing admitted on cross-examination that none of the transportation options suggested by the Department provide for assistance with activities of daily living or assistance with personal care and would not allow for a guardian to remain during the therapies. Another option suggested by the Department, Special Transportation Services, had the same limitations in terms of providing coverage for an adult to remain with C.F. during the therapies and costs $5.00 per person per round-trip.
The Department also disagreed with Dr. Romero-Bolumen, C.F.'s pediatrician, who prescribed six hours per day of PCA services. Maximus had never requested information from any of C.F.'s treatment sources, thus Dr. Guillarte was unaware that C.F.'s doctor determined that six hours per day of PCA services was medically necessary.
The hearing officer subsequently denied C.F.'s appeal and affirmed the Department's decision to reduce the amount of personal care assistance hours available to C.F. The hearing officer determined that C.F.'s six hours per day of personal care assistance exceeded medical necessity or there was no determination that the service was medically necessary. In the Final Order, the hearing officer stated that C.F.'s treating physician did not carry more weight because "though the petitioner's physician showed extensive medical knowledge of the petitioner's medical conditions and knowledge of PCA services in general, he did not indicate an awareness of the Department's Medicaid Waiver Program limitations, etc [sic], related to PCA's services." The definition of personal care assistance given in the Final Order is, "[p]ersonal care assistance in the family home should be provided only to assist the parent or primary caregiver of children in meeting personal care needs of the child." The hearing officer continued:
As shown in the Findings of Fact, the petitioner's treating physician indicated *5 that PCA services are necessary for the petitioner to be utilized for supervision, transportation and for service coverage out of the family home, all of which do not comply with the definition noted in the above referenced Department Development Services Waiver Services Medicaid Coverage and Limitations Handbook. Thus, the hearing officer finds the treating physician's medical necessity definition does not conform or meet the Department's definition as per the above cited authorities for the PCA services.

LEGAL ANALYSIS
First, we review this case de novo because an agency's final order based on a conclusion of law is subject to de no review. See Steward v. Dep't of Children & Families, 865 So.2d 528, 530 (Fla. 1st DCA 2003). In addition, this Court may set aside an agency action when it finds that the agency has erroneously interpreted a provision of law. See Metropolitan Dade Cty. v. Dep't of Envtl. Prot., 714 So.2d 512, 515 (Fla. 3d DCA 1998). See also § 120.68(7)(d), Fla. Stat. (2003).
The hearing officer erred when he applied definitions of medical necessity and personal care assistance that are overly restrictive and violate federal Medicaid law. Florida Administrative Code R. 59G-1.010(166) defines "medically necessary" or "medical necessity," in pertinent part, as the following:
(166) "Medically necessary" or "medical necessity" means that the medical or allied care, goods, or services furnished or ordered must:
(a) Meet the following conditions:
1. Be necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain;
2. Be individualized, specific, and consistent with symptoms or confirmed diagnosis of the illness or injury under treatment, and not in excess of the patient's needs;
3. Be consistent with generally accepted professional medical standards as determined by the Medicaid program, and not experimental or investigational;
4. Be reflective of the level of service that can be safely furnished, and for which no equally effective and more conservative or less costly treatment is available; statewide; and
5. Be furnished in a manner not primarily intended for the convenience of the recipient, the recipient's caretaker, or the provider.
...
See Fla. Admin. Code. R. 59G-1.010(166)(2003). The language used in the Final Order shows that the hearing officer improperly applied a more restrictive definition of "medical necessity" than that outlined by federal Medicaid law. The Department used the same definition of medical necessity that it uses for both adults and children and failed to incorporate the EPSDT requirements.
States are required to cover EPSDT services for all Medicaid-eligible minors under age twenty-one (21). See § 42. U.S.C. § 1396(a)(43). The treatment portion of EPSDT must include any "... necessary health care, diagnostic services, treatment and other measures described in section 1905(a) to correct or ameliorate ... the physical and mental illnesses and conditions, whether or not such services are covered for adults in the state's Medicaid program." See 42 U.S.C. § 1396d(r)(5). Covered services include case management, transportation, home health, personal care services and "any medical or remedial services (provided in a facility, a home or other setting) recommended by a physician or other licensed practitioner of the *6 healing arts within the scope of their practice under state law, for the maximum reduction of physical or mental disability..." See 42 U.S.C. § 1396d(a)(13). The state definition of medical necessity is a narrower view that does not encompass the assistance a caretaker would need in taking care of a disabled child. The federal definition, on the other hand, encompasses a more expansive view, allowing for services that sustain or support, as opposed to actually treating the disability.
In addition, we find that the hearing officer also applied an improperly narrow definition of personal care assistance. In the Final Order, the Hearing officer stated that PCA services cannot be "utilized for supervision, transportation and for service coverage out of the family home, ..." He based this conclusion on an excerpt from the Department's PCA rule describing the allowable scope of personal care assistance services provided in the family home.[2]
The hearing officer's interpretation directly conflicts with federal Medicaid law authorizing PCA services when prescribed by a physician in accordance with a treatment plan, provided by a qualified individual other than a family member and "furnished in a home or other location." See 42 U.S.C. § 1396d(a)(24). Because C.F. is a minor entitled to EPSDT benefits, his need for PCA services must be evaluated under the more expansive federal definition. Accordingly, the hearing officer erred in applying definitions of "medical necessity" and "personal care assistance" that were too restrictive and violated federal Medicaid law.
The hearing officer also erred in failing to give proper weight to C.F.'s treating physician's opinion and in concluding that the Department met its medical evidentiary burden to justify reducing C.F.'s services. There was insufficient competent evidence to support the hearing officer's decision. In his final order, the hearing officer failed to give the pediatrician's opinion proper weight because the pediatrician's recommendations did not comply with PCA definitions in the Handbook and because the pediatrician's medical necessity definition did not conform to the Department's definition.
Furthermore, because this case involves a reduction of Medicaid services, the Department has the burden of proof. See Fla. Admin.Code R. 65-2.060; Balino v. Dep't of Health & Rehab. Serv., 348 So.2d 349, 351-52 (Fla. 1st DCA 1977). Here, there was no competent substantial evidence to support the hearing officer's determination that the Department met its burden of proof to show that C.F.'s PCA hours were no longer medically necessary. See 120.68(7)(b), Fla. Stat. (2003); De Groot v. Sheffield, 95 So.2d 912, 916 (Fla. 1957). At the hearing, the Department did not present testimony or written evidence from a physician which justified reducing C.F.'s PCA hours from six to four hours. The Department presented the testimony *7 of Dr. Guillarte; however, she is not a health care professional, has never met C.F. or his family, and has never spoken to any of C.F.'s providers. Her recommendation to reduce C.F.'s PCA hours was also based on the state's more restrictive definition of medical necessity and PCA services.
C.F.'s life-long pediatrician, Dr. Romero-Bolumen, testified regarding C.F.'s medical need for the same level of PCA services he had been receiving. He testified that "the number of personal care attendant hours C.F. receives is specific and consistent with symptoms of his illnesses under treatment and not in excess of his needs.... the personal care attendant hours are reflective of the level of service that can be safely furnished and for which no equally effective and more conservative or less costly treatment is available." C.F.'s treating physician prescribed six hours of PCA care that, based on her medical opinion, was medically necessary. The hearing officer rejected this opinion based on the erroneous legal standard for medical necessity and personal care assistance.
A state agency must give considerable and substantial weight to the opinions of treating physicians. See Snyder v. Florida Dept. of Children and Families, 705 So.2d 1067, 1068-69 (Fla. 1st DCA 1998). In addition, the failure to credit the opinion of the treating physician must be accompanied by a showing of good cause. Id. at 1069. Here, the Hearing Officer's reason for rejecting the pediatrician's opinion does not meet the burden of "good cause." The opinion of C.F.'s treating physician should have been given greater weight than the opinion of the Maximus reviewer, who had never met C.F. or consulted with C.F.'s treating physician. Thus, there is no competent substantial evidence in the record to justify reducing C.F.'s PCA hours.

CONCLUSION
We conclude that the Department incorrectly used more restrictive definitions of "medical necessity" and "personal care assistance" than federal law requires. The hearing officer also failed to give the proper weight to the opinion and recommendation of C.F.'s treating physician.
We reverse the decision of the hearing officer upon which this appeal is based. The Department is ordered to (1) provide C.F. with six hours per day of personal care assistance services from the Home and Community Based Services waiver program, as prescribed by C.F.'s treating physician who determined that this level of care was medically necessary; (2) guarantee that C.F. will be enrolled and receive services from the Consumer Direct Care Plus Program; and (3) coordinate C.F.'s transportation to and from his various therapies at no cost to him.
Reversed and remanded.
NOTES
[1] C.F. is currently eleven years old.
[2] DCF's PCA rule does, in fact, authorize PCA services outside the family home if the beneficiary is engaged in a community activity. See Handbook at 2-50. Furthermore, DCF's rule recognizes that personal care providers may transport beneficiaries by including specific requirements relating to driver's licenses, car registration and insurance. See Handbook at 2-51. It states: "If the [personal care assistance] provider plans to transport beneficiaries in their private vehicle, at the time of enrollment, the provider must be able to show proof of valid: 1) driver's license; 2) car registration; and 3) insurance. Subsequent to enrollment, the provider is responsible for keeping this documentation up to date and is responsible for notifying the District Office of all traffic violations, with the exception of parking tickets, immediately." Thus, the PCA rule does anticipate a personal care assistant providing transportation.