ROTHENBERG, J.
The appellants, Carmen I. Diaz (“Diaz”), Diaz Group Home # 1 (“Home # 1”), and Diaz Group Home # 2 (“Home # 2”) (collectively, “the Diaz appellants”), appeal from: (1) a final order issued by the Agency for Health Care Administration (“the AHCA”) dismissing with prejudice their Amended Petition for Formal Administrative Hearing; and (2) a final order issued by the Agency for Persons with Disabilities (“the APD”) denying their Amended Petition for Formal Administrative Hearing. Because the agencies properly determined that the instant dispute over the termination of a Medicaid Waiver Services Agreement (“Provider Agreement”) involves a voluntary contract, does not implicate any substantial interests, and should be resolved before the circuit court, we affirm.

BACKGROUND AND PROCEDURAL HISTORY

The AHCA is the Medicaid agent for Florida provided by federal law. However, the AHCA has delegated the duty to perform daily operations to the APD. In essence, the APD ensures that waiver program providers comply with applicable rules and regulations, while the AHCA pays qualified providers for services rendered to program recipients. A qualified provider must possess a facilities license and enter into a Provider Agreement with the APD. Qualified providers receive a *80 Medicaid number enabling the receipt of payment from the AHCA.
Before the commencement of this case, Diaz was a qualified provider in possession of separate facilities licenses for Home # 1 and Home # 2. Diaz also had in effect a Provider Agreement which was not scheduled to expire until July 2011, and a Florida Medicaid number. Home # 1 and Home #2 provided services to Medicaid program recipients with severe developmental disorders. Beginning in late 2008, and continuing into 2009, a number of disputes arose between Diaz and certain APD inspectors conducting checks of Home # 1 and Home # 2.
On June 10, 2009, the APD -wrote a letter to Diaz stating that “we are exercising our option to terminate this [Provider Agreement] without cause,” effective July 10, 2009. Six days later, the AHCA informed Diaz by letter that because the APD terminated the Provider Agreement, Diaz’s Medicaid provider number was also being terminated. On July 20, 2009, Diaz, Home # 1, and Home # 2 filed a petition for formal administrative hearing based upon the termination of the Provider Agreement and subsequent revocation of Diaz’s Medicaid provider number.[1]
Neither agency referred the matter to Florida’s Division of Administrative Hearings (“DOAH”). The AHCA dismissed the petition with prejudice by final order, stating that “the courts, and not administrative tribunals, must generally hear disputes involving voluntary contracts.” The APD denied the petition by final order, stating that there was no “legal entitlement to the continuation of the [Provider Agreement] since [Diaz] had agreed that the agency could terminate it any time without cause.” These consolidated appeals followed.

ANALYSIS

A. Standard of Review

As the material facts are not in dispute, our review of the agencies’ final orders is de novo. See S. Baptist Hosp. of Fla., Inc. v. Welker, 908 So.2d 317, 319 (Fla.2005) (“This question involves a pure question of law and thus is subject to de novo review.”); C.F. v. Dep’t of Children & Families, 934 So.2d 1, 5 (Fla. 3d DCA 2005) (“[W]e review this case de novo because an agency’s final order based on a conclusion of law is subject to de no[vo] review.”).

B. Provider Agreements are Statutorily Authorized Voluntary Contracts

The statutory framework applicable to Florida’s Medicaid program conditions the receipt of funds from the AHCA on the existence of a Provider Agreement. § 409.907, Fla. Stat. (2009) (“The agency may make payments for ... services rendered to Medicaid recipients only to an individual or entity who has a provider agreement in effect with the agency.”). A Provider Agreement is described as follows:
Each provider agreement shall be a voluntary contract between the agency and the provider, in which the provider agrees to comply with all laws and rules pertaining to the Medicaid program when furnishing a service or goods to a Medicaid recipient and the agency agrees to pay a sum ... for the service provided to the Medicaid recipient. Each provider agreement shall be effective for a stipulated period of time, *81 shall be terminable by either party after reasonable notice, and shall be renewable by mutual agreement.
§ 409.907(2), Fla. Stat. (2009) (emphasis added). The specifically relevant termination clause [2] in the Provider Agreement signed by Diaz provides:
This Agreement may be terminated by either party without cause, upon no less than 30 calendar days notice in writing to the other party unless a lesser time is mutually agreed upon in writing by both parties. Said notice shall be delivered by certified mail, return receipt requested, or in person with proof of delivery.
(Emphasis added). There is no question that the APD terminated the instant Provider Agreement in accordance with its express terms. It is clear, therefore, that the Provider Agreement involved in this case was authorized by statute, freely entered into by both parties, and contained a termination without cause provision that was equally available to both parties.

C. No Contractual Provision or Legal Authority Calls for Resolution of this Dispute Outside of the Circuit Court

When an independent party enters into a voluntary contract with an agency of this state, contractual disputes among the parties are typically resolved in the civil courts. Vincent J. Fasano, Inc. v. Sch. Bd. of Palm Beach Cnty., 486 So.2d 201, 202-03 (Fla. 4th DCA 1983) (“[B]reach of contract is ordinarily a matter for judicial rather than administrative or quasi-judicial consideration.”); State Rd. Dep’t v. Cone Bros. Contracting Co., 207 So.2d 489, 491 (Fla. 1st DCA 1968) (“Disputes such as these are traditionally settled in the courts of this state by adversary proceedings in which the agency as a contracting party is treated as any other citizen.”). The traditional rule, however, does not always require the in-court litigation of disputes between agencies and contracting parties. For example, contracting parties remain free to negotiate and enforce contractual provisions requiring an alternative form of dispute resolution. See Dep’t of Health & Rehab. Servs. v. E.D.S. Fed. Corp., 631 So.2d 353, 357 (Fla. 1st DCA 1994) (enforcing dispute resolution clause requiring the contracting parties to submit to administrative procedure); Paid Prescriptions, Inc. v. Dep’t of Health & Rehab. Servs., 350 So.2d 100, 102 (Fla. 1st DCA 1977) (holding that “the power to contract implies the power to agree to settlement of disputes under the contract by arbitration”). In addition, the operation of law will sometimes effect a circumvention of the traditional rule. See Medicaid, Program Integrity, Dep’t of Health & Rehab. Servs., v. Conval-Care, Inc., 636 So.2d 117, 118 (Fla. 1st DCA 1994) (holding that in a Medicaid overpayment dispute, the statute requiring an administrative hearing supersedes the traditional rule providing that the agency lacks jurisdiction).
The instant Provider Agreement contains no dispute resolution clause, and the parties did not otherwise agree to settle their dispute in a specific forum. Nor is there a legal requirement that a dispute over the termination without cause of a Provider Agreement be heard in an alternative forum. The Diaz appellants argue that because the Legislature has authorized a series of administrative sanctions applicable to providers who commit specific fraudulent or abusive acts, see generally § 409.913, Fla. Stat. (2009) (detailing numerous sanctions applicable to certain be *82 haviors, and providing for chapter 120 administrative hearings in the context of Medicaid overpayment disputes), a dispute over the termination of a Provider Agreement without cause must, in the name of fundamental fairness, be settled administratively. We disagree.
By its own wording, section 409.913 exists “to ensure that fraudulent and abusive behavior and neglect of recipients occur to the minimum extent possible, and to recover overpayments and impose sanctions as appropriate.” Id. To further this objective, the Legislature has simply required that the agencies respond administratively when a provider engages in fraudulent or abusive practices. Outside of fraud or abuse, there is no such requirement. Thus, it is not, as the Diaz appellants contend, fundamentally unfair to refer a dispute over the termination of a Provider Agreement without cause — where no issue of fraud or abuse is implicated — to the circuit court.

D. Provider Agreement Termination Without Cause Does Not Implicate Substantial Interests

Having failed to demonstrate a contractual or legal reason for a departure from Florida’s rule that ordinarily, contractual disputes between agencies and private entities must be determined in court, the Diaz appellants argue that they have a substantial interest in continued operation under the Provider Agreement. Again, we disagree. Section 120.57(1) provides for a full evidentiary hearing before an administrative law judge when an agency’s determinations affect a party’s substantial interests. A party’s substantial interests are involved “where ‘(1) the proposed action will result in injury-in-fact which is of sufficient immediacy to justify a hearing; and (2) the injury is of the type that the statute pursuant to which the agency has acted is designed to protect.’ ” Sch. Bd. of Palm Beach Cnty. v. Survivors Charter Sch., Inc., 3 So.3d 1220, 1231 (Fla. 2009) (quoting Fairbanks, Inc. v. State, Dep’t of Transp., 635 So.2d 58, 59 (Fla. 1st DCA 1994)).
In this case, the APD terminated the Provider Agreement pursuant to section 409.907, which specifically provides that the Provider Agreement was “terminable by either party after reasonable notice.” § 409.907(2). In addition, subsection (12) states that “[l]icensed, certified, or otherwise qualified providers are not entitled to enrollment in a Medicaid provider network.” § 409.907(12) (emphasis added). Because the statute pursuant to which the agencies have acted provides that the agencies may terminate Provider Agreements upon proper notice, and that would-be Medicaid providers are not entitled to continued program participation, the Diaz appellants have failed to establish the second prong of the Fairbanks test. Accordingly, no valid entitlement or substantial interest could be protected or saved by allowing a section 120.57(1) administrative hearing. See also Herold v. Univ. of S. Fla., 806 So.2d 638, 640 (Fla. 2d DCA 2002) (“[C]ase law makes it clear that a substantial interest is one based on a legal entitlement, and not on a mere unilateral expectation.”); Metsch v. Univ. of Fla., 550 So.2d 1149, 1150 (Fla. 3d DCA 1989) (holding that a hope or unilateral expectation does not rise to the level of a substantial interest).
We are mindful that as longtime providers under Florida’s Medicaid program, the Diaz appellants expected continued participation, and the termination without cause of the Provider Agreement may effectively put them out of business. Although this result may appear harsh, based on the statutory authority and case law discussed above, the agencies’ decision was entirely *83 appropriate. See 701 Pharmacy Corp. v. Perales, 930 F.2d 163, 169 (2d Cir.1991) (“Although it is unfortunate that a provider relying on its Medicaid participation may effectively be put out of. business if terminated, the department’s rationale for refusing a written appeal is legitimate”).

CONCLUSION

The Diaz appellants seek to argue that the APD’s “without cause” termination of the instant Provider Agreement should be construed as an illegal, unpromulgated rulemaking in excess of its authority under federal and state law. We need not, and do not comment on the merits of that position. Similarly, this decision should not be construed as an opinion on “for cause” terminations under a different section of Medicaid Waiver Services Agreements.
Instead, we hold that: (1) the Provider Agreement was a statutorily authorized, bi-lateral, and voluntary contract; (2) the APD terminated the Provider Agreement without cause in accordance with the Provider Agreement’s express terms; (3) no contractual provision or legal authority dictates that disputes over the without cause termination of the Provider Agreement be heard in any alternative forum; and (4) the Diaz appellants’ substantial interests were not implicated by the termination of the Provider Agreement. Accordingly, the AHCA and the APD properly determined that the Diaz appellants were not entitled to a section 120.57(1) administrative hearing. The instant contract termination dispute should have been brought before the circuit court.
Affirmed.

. On June 30, 2009, the APD notified Diaz that for cause, it was not renewing the facilities licenses of Home # 1 and Home # 2. Those actions were challenged by a separate set of petitions (not involved in this appeal), and there is no dispute that resolution of those petitions occurs administratively.

. Provider Agreements also provide for terminations "for cause" which are not applicable to this appeal.