FERNANDEZ, J.
I.B. appeals the final order of the Florida Department of Children and Families’ Office of Appeal Hearings, affirming the Agency for Health Care Administration’s decision to reduce Medicaid-funded personal care assistance hours based on a Medicaid regulation in Florida that prohibits the hours be used for transporting recipients. We reverse and remand, concluding that the hearing officer erroneously relied upon an incorrect and inapplicable rule from the Florida Administrative Code to determine medical necessity and that the final order was not supported by competent, substantial evidence.
I.B. is five years-old. He is autistic, non-verbal, and requires assistance with activities of daily living (ADL) including *8 meal preparation, feeding, dressing, hygiene, and incontinence care/diaper changes. He lives with his mother, R.B., and five year-old sister. I.B. attends school on weekdays and Medicaid-paid one-hour speech and occupational therapy sessions Monday through Thursday.
In July 2010, I.B.’s pediatrician, Dr. Valeria Salinas-Sanchez, signed an order for I.B. to receive home health services, including “unskilled nursing for personal care assistance and t<3 assist with ADL.” Her order recommended six hours a day, Sunday through Friday, and thirteen hours on school holidays for one-hundred eighty days. I.B. is eligible for Medicaid and the single state agency in Florida for administering Medicaid is the Agency for Health Care Administration (“AHCA”). Keystone Peer Review Organization South (“KePRO”) is contracted by AHCA to review incoming prior authorization requests.
On October 12, 2010, a board-certified, Florida-licensed physician consultant under contract with KePRO determined that I.B.’s personal care assistance (“PCA”) hours should be limited to four hours Monday through Friday, six hours on Sunday, and eleven hours on school holidays (denying hours to, from, and during I.B.’s therapy sessions). I.B. exercised the right to a re-consideration by a second KePRO physician consultant. On November 13, 2010, the second physician reduced I.B.’s PCA hours to two hours Monday through Thursday, three hours on Friday, and eight hours on school holidays (denying the hours to, from, and during I.B.’s therapy sessions; and denying R.B.’s Sunday church and work hours). I.B. exercised the right to a Fair Hearing on the matter.
On December 16, 2010, Hearing Officer Robert Akel from the Department of Children and Families Office of Appeal Hearings presided over the hearing and placed the burden of proof on AHCA. The hearing officer affirmed the second KePRO physician consultant’s hours, citing testimony and evidence presented by Dr. Jeffrey N. Nathanson (KePRO’s medical director for Florida operations) and Nurse Savia Smith (AHCA’s representative). The two expert witnesses presented a mixture of confusing and erroneous testimony, to which AHCA has conceded, and those statements are directly related to the hearing officer’s ruling.
The hearing officer relied upon a mixture of Florida Administrative Code Rules, relying on Florida Administrative Code Rule 59G-1.010, which defines “medical necessity.”[1] He also relied on Florida Administrative Code Rule 59-G-4.290, *9 which discusses skilled services.[2] The hearing officer’s denial of I.B.’s hours is the subject of this appeal.
We first address the law upon which the hearing officer relied to determine that I.B. was not entitled to the hours requested. I.B.’s pediatrician recommended unskilled nursing services for his PCA hours. The hearing officer, however, reviewed an unskilled PCA recommendation using the skilled nursing medical necessity standard. The hearing officer should have applied the standard of care for PCA, as defined in the Florida Medicaid Home Health Services Coverage and Limitations Handbook, incorporated into law through Florida Administrative Code Rule 59G-4.130.[3] The application of this correct standard would have resulted in the reversal of AHCA’s denial of LB.’s PCA hours because I.B. met the medical necessity requirements. Thus, the hearing officer erred in his application of the law and determination that I.B. was not entitled to the PCA hours requested.
Next, we turn to the issue of whether the agency’s determination was based upon competent substantial evidence. An administrative agency’s findings of fact are subject to a competent, substantial evidence review; while findings that are interpretations of relevant law are subject to a de novo review. Jacoby v. Bd. of Med., 917 So.2d 358, 359 (Fla. 3d DCA 2005). Although courts typically uphold agency decisions that are supported by competent, substantial evidence, no deference is due an error of law. C.F. v. Dep’t of Children & Families, 934 So.2d 1, 5 (Fla. 3d DCA 2005).
In C.F., an autistic, disabled nine year-old had his PCA hours reduced when it was discovered that some of the hours were used for transportation to and from his different therapies and services. Id. at 4-5. The hearing officer improperly applied more restrictive definitions of medical necessity and personal care assistance that violated federal Medicaid law. Id. at 5. This Court reversed and remanded, finding that states are required to cover Early Periodic Screening, Diagnosis, and Treatment (“EPSDT”) services for all Medicaid-eligible minors under age twenty-one. Federal and state EPSDT mandates provide “necessary health care, diagnostic services, treatment, and other measures [... ] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.” Id. See also § 409.905(2), Fla. Stat. (2011). This Court ordered the department to coordinate C.F.’s transportation to and from his *10 various therapies at no cost to him. Id. at 7.
I.B.’s disabilities and circumstances are nearly identical to those of C.F. Like C.F., I.B. is a Medicaid-eligible minor that requires assistance with ADL, conditions where his parent cannot provide transportation to therapy sessions and services, and his Medicaid administration agency reducing hours based on overly restrictive state protocol. Although the handbook may not cover transportation to and from I.B.’s therapy sessions, he would receive those services as a Medicaid-eligible minor under the EPSDT regulations. Id. at 2. However, the EPSDT regulations were never mentioned at the Fair Hearing. AHCA has conceded that its witnesses’ testimony applied erroneous criteria to justify denying I.B.’s PCA hours. By AHCA’s own admission, its expert witnesses failed to provide competent, substantial evidence at the hearing.
Furthermore, the hearing officer claimed that his ruling was based partly on Dr. Nathanson’s testimony that I.B.’s claim was moot because AHCA had changed its approach to caring for autistic children. This contradicts AHCA’s assurance that it is not changing rules regarding Medicaid Home Health Services or personal care services to autistic children. Also, Dr. Nathanson mistakenly gave testimony regarding an irrelevant waiver program. I.B. never enrolled in a waiver program.
Consequently, the hearing officer’s final order was not predicated on competent, substantial evidence, but rather on misleading and mistaken testimony on issues of law and protocol from AHCA’s and Ke-PRO’S representatives. AHCA has conceded this point.[4]
In conclusion, the hearing officer erroneously relied upon an incorrect and inapplicable rule to determine medical necessity. Furthermore, competent, substantial evidence does not support the hearing officer’s determination. For these reasons, we reverse the decision of the hearing officer. AHCA is ordered to provide I.B. with six hours per day of personal care assistance services Sunday through Friday and thirteen hours of personal care assistance services on school holidays.
Reversed and remanded with directions.

.Florida Administrative Code Rule 59G-1.010(166) defines medical necessity, in pertinent part, as follows:
(166) “Medically necessary” or "medical necessity” means that the medical or allied care, goods, or services furnished or ordered must:
(a) Meet the following conditions:
1. Be necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain;
2. Be individualized, specific, and consistent with symptoms or confirmed diagnosis of the illness or injury under treatment, and not in excess of the patient’s needs;
3. Be consistent with generally accepted professional medical standards as determined by the Medicaid program, and not experimental or investigational;
4. Be reflective of the level of service that can be safely furnished, and for which no equally effective and more conservative or less costly treatment is available; statewide; and
5. Be furnished in a manner not primarily intended for the convenience of the recipient, the recipient’s caretaker, or the provider.
See Fla. Admin. Code R. 59G-1.010(166X2003).

.Florida Administrative Code Rule 59G-4.290(3)(b) describes the criteria that must be met to qualify for skilled nursing care as follows:
1. Ordered by and remain under the supervision of a physician;
2. Sufficiently medically complex to require supervision, assessment, planning, or intervention by a registered nurse;
3. Required to be performed by, or under the direct supervision of, a registered nurse or other health care professionals for safe and effective performance;
4. Required on a daily basis;
5. Reasonable and necessary to the treatment of a specific documented illness or injury; and
6. Consistent with the nature and severity of the individual's condition or the disease state or stage.

.The Home Health Handbook describes PCA services as that which “provide medically necessary assistance with activities of daily living that support a recipient’s medical care needs.” See Florida Medicaid Home Health Services Coverage and Limitations Handbook (July 2008), pp. 2-22.

. To ameliorate these errors, AHCA in its Answer Brief has volunteered to raise I.B.’s PCA hours to three and one-half hours Monday through Thursday, four hours on Friday, and thirteen hours on school holidays. However, this is inconsistent with what I.B.’s pediatrician ordered.