ROTHENBERG, J.
United States Blood Bank, Inc., a Delaware corporation (“predecessor USBB”), merged into USBB Acquisition Corp. and ultimately changed its name to United States Blood Bank, Inc., a Florida corpora *1141 tion (“successor USBB”). The issue below was whether, at the time of the transfer of predecessor USBB’s employees to successor USBB, there was any common ownership, management, or control between the two employers. And, if so, whether the transfer was with the knowledge or reckless disregard of the requirements of section 443.131(S)(g)l.a., Florida Statutes (2008).[1] The Florida Department of Revenue (“Department”) concluded that at the time of the transfer there was a common ownership, management, or control between the two employers, and accordingly, increased successor USBB’s tax rate pursuant to section 443.131(3). The Agency for Workforce Innovation (“Agency”) ultimately affirmed the increase of successor USBB’s unemployment compensation rate by the Department. Because the Agency’s factual determinations are supported by competent, substantial evidence, we affirm.
The record reflects that after the Department notified successor USBB that its unemployment compensation tax rate was being increased, successor USBB filed a timely request for redetermination, and a hearing was conducted by a Special Deputy. The Special Deputy found and/or concluded in part as follows:
At the time of the transfer, Enrique Sotolongo was the director of both corporations. Thus, there was a common ownership, management, or control at the time of the transfer.... The determination issued by [the Department] increased the tax rate to the maximum rate allowed by law because it was determined that a substantial purpose of the transfer was to obtain a reduced liability for contributions. [Successor USBB] has failed to establish by a preponderance of the evidence that the de *1142 termination of [the Department] is in error.
In addition to relying on section 443.131, the Special Deputy cited to Rule 60BB-2.031(3) of the Florida Administrative Code, which provides, in relevant part:
(3) Mandatory Transfer of Employment Records. Each employer must notify [the Department] in writing of any total or partial transfer of trade or business within 90 days after the date of transfer if there was any common ownership, management, or control of the two employers at the time of the transfer. For the purpose of implementing Section 443.131(g), F.S.:
[[Image here]]
(c) A person in “management” includes any officer or director of a corporation, ... or person with the ability to direct the activities of an employing unit, either individually or in concert with others.
(d) “Common management” exists when a person concurrently occupies management positions in two or more businesses.
Successor USBB filed exceptions to the Special Deputy’s recommended order. Thereafter, the Agency entered an order rejecting successor USBB’s exceptions; adopting the Special Deputy’s findings of fact after determining they were supported by competent, substantial evidence in the record; adopting the Special Deputy’s conclusions of law after finding they reflect a reasonable application of the law to the facts; and ordering the affirmance of the Department’s determination dated July 24, 2010. Successor USBB appeals the Agency’s final order.
In an appeal from final administrative action, this Court reviews the agency’s findings of fact to determine whether they are supported by competent, substantial evidence in the record. See § 120.68(7)(b), Fla. Stat. (2011); I.B., ex rel. R.B. v. State, Agency for Health Care Admin., 87 So.3d 6, 9, 2012 WL 637911 (Fla. 3d DCA 2012) (“An administrative agency’s findings of fact are subject to a competent, substantial evidence review; while findings that are interpretations of relevant law are subject to a de novo review.”); Salinas v. E. Aero Marine, 908 So.2d 1169, 1171 (Fla. 3d DCA 2005); Maynard v. Fla. Unemployment Appeals Comm’n, 609 So.2d 143, 145 (Fla. 4th DCA 1992). Further, we review the agency’s conclusions of law de novo, see § 120.68(7)(d), Fla. Stat. (2011); I.B., ex rel. R.B., 87 So.3d at 9; Dorcely v. State Dep’t of Bus. & Profl Regulation, 22 So.3d 834 (Fla. 4th DCA 2009), and we will defer to the agency’s conclusions of law unless they are clearly erroneous or contrary to law. See Palm Beach Cnty. Canvassing Bd. v. Harris, 772 So.2d 1273, 1283 (Fla. 2000) (“Florida courts generally will defer to an agency’s interpretation of statutes and rules the agency is charged with implementing and enforcing.”); I.B., ex rel. R.B., 87 So.3d at 9 (“Although courts typically uphold agency decisions that are supported by competent, substantial evidence, no deference is due an error of law.”).
The record reflects that the Agency’s factual findings are supported by competent, substantial evidence. First, the record reflects that predecessor USBB transferred its sixty-six employees to USBB. In addition to the testimony of the accountant for both employers and the Department’s tax auditor, annual reports filed by predecessor and successor USBB were introduced at the hearing conducted by the Special Deputy. Importantly, predecessor USBB’s corporate records list Enrique So-tolongo as its secretary, treasurer, and director, and successor USBB’s corporate *1143 records list Sotolongo as its director. Although the accountant attempted to downplay Sotolongo’s involvement in predecessor USBB by testifying that Sotolongo did not act as predecessor USBB’s secretary, treasurer, and secretary, but instead, was merely a “consultant,” he acknowledged he was not involved in the decision to transfer the employees from predecessor USBB to successor USBB, and, therefore, he had no personal knowledge of the reason for the transfer.
The Special Deputy, as the trier of fact, was charged with the responsibility of weighing the evidence, and as such, was free to accept or reject all or any portion of any witness’s testimony and to resolve conflicts in the evidence. See His Kids Daycare v. Fla. Unemployment Appeals Comm’n, 904 So.2d 477, 480 (Fla. 1st DCA 2005). “The fact that other evidence exists, which would lead to a different conclusion, is of no import.” Id. The Special Deputy was therefore free to reject the accountant’s testimony and rely on the corporate records and filings in determining there was a common ownership, management, or control between the two employers.
Whether Sotolongo actually exercised control or actively managed either corporation is not dispositive. Florida Administrative Code Rule 60BB-2.031 implements section 448.131, Florida Statutes. Rule 60BB-2.031(3)(c) defines “management” as “any officer or director of a corporation, owner of a sole proprietorship, partner in a partnership, manager of an LLC, or person with the ability to direct the activities of an employing unit, either individually or in concert with others.” (emphasis added). “Common management” occurs when a “person concurrently occupies management positions in two or more businesses.” Fla. Admin. Code. R. 60BB-2.031(3)(d) (emphasis added).
Because the corporate records clearly reflect that Sotolongo was a director in both predecessor and successor USBB, and a director of a corporation is specifically defined as a person in management, there was common management between the two employers. Thus, the Agency’s determination was supported by competent, substantial evidence, and it comports with the essential requirements of the law.
Affirmed.

. The Department's notification cited to pertinent provisions of section 443.131(3), Florida Statutes, which provide, in part:
(3) VARIATION OF CONTRIBUTION RATES BASED ON BENEFIT EXPERIENCE.—
[[Image here]]
(g) Transfer of unemployment experience upon transfer or acquisition of a business.— Notwithstanding any other provision of law, upon transfer or acquisition of a business, the following conditions apply to the assignment of rates and to transfers of unemployment experience:
l.a. If an employer transfers its trade or business, or a portion thereof, to another employer and, at the time of the transfer, there is any common ownership, management, or control of the two employers, the unemployment experience attributable to the transferred trade or business shall be transferred to the employer to whom the business is so transferred....
b. If, following a transfer of experience under sub-subparagraph a., the Agency for Workforce Innovation or the tax collection service provider determines that a substantial purpose of the transfer of trade or business was to obtain a reduced liability for contributions, the experience rating account of the employers involved shall be combined into a single account and a single rate assigned to the account.
[[Image here]]
3. If a person knowingly violates or attempts to violate subparagraph 1. or sub-paragraph 2. or any other provision of this chapter related to determining the assignment of a contribution rate, or if a person knowingly advises another person to violate the law, the person shall be subject to the following penalties:
a. If the person is an employer, the employer shall be assigned the highest rate assignable under this chapter for the rate year during which such violation or attempted violation occurred and for the 3 rate years immediately following this rate year. However, if the person's business is already at the highest rate for any year, or if the amount of increase in the person’s rate would be less than 2 percent for such year, then a penalty rate of contribution of 2 percent of taxable wages shall be imposed for such year and the following 3 rate years.
[[Image here]]
7. For purposes of this paragraph:
[[Image here]]
b. "Trade or business” shall include the employer’s workforce.