# Third District Court of Appeal

## State of Florida

Opinion filed July 23, 2014.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D13-2446
Lower Tribunal Nos. 12-1556 & 12-3291
_____

**Elizabeth Padron,**
Appellant,

vs.

**State of Florida, Department of Environmental Protection, and Carl J. Ekblom,**
Appellees.


An Appeal from the State of Florida, Department of Environmental Protection.

The Silver Law Group, P.A., and Patricia M. Silver and John W. Annesser (Islamorada), for appellant.

Matthew Z. Leopold (Tallahassee), General Counsel, and David K. Thulman (Tallahassee), Senior Assistant General Counsel, for appellee State of Florida, Department of Environmental Protection; Hershoff, Lupino & Yagel, LLP, and James S. Lupino (Tavernier) and Brittany N. Miller (Tavernier), for appellee Carl J. Ekblom.

Before SUAREZ, ROTHENBERG and LOGUE, JJ.

ROTHENBERG, J.

Elizabeth Padron ("Padron") appeals from a Final Order of the Department of Environmental Protection ("the DEP") adopting the recommended order entered by an administrative law judge ("ALJ") with the Division of Administrative Hearing ("DOAH"). The ALJ recommended that the DEP approve its earlier determination that Carl J. Ekblom ("Ekblom") does not need to obtain an Environmental Resource Permit ("ERP") to install a proposed cradle boat lift adjacent to an existing finger pier because Ekblom established the four criteria set forth in Rule 40E-4.051(3)(b) of the Florida Administrative Code,[1] including that

---

[1] Rule 40E-4.051 provides in part as follows:

**Exemptions From Permitting.**
The District will exempt from regulation under Section 373, Part IV, F.S., those activities that the District determines will have only minimal or insignificant individual or cumulative adverse impacts on the water resources of the district. Exemptions from permitting . . . are set forth below. . . .

. . . .

    (3) Docking Facilities and Boat Ramps.

. . . .

    (b) The installation or repair of private docks, piers and recreational docking facilities . . . . To qualify for this exemption, any such structure:

        1. Shall be used for recreational, non-commercial activities;

        2. Shall be constructed or held in place by pilings, including floating docks, so as not to involve filling or dredging other that [sic] necessary to install the pilings;

        3. Shall not substantially impede the flow of water or create a navigational hazard; and

        4. . . . Activities associated with a dock shall include the

the proposed cradle boat lift will not "create a navigational hazard."  We affirm.

## I.  <u>Facts and Procedural History</u>

Ekblom and Padron own adjacent lots that sit at the western end of Plantation Lake, a man-made canal in Islamorada.  Both properties have marginal docks running along their shorelines that meet at an acute angle, and Padron has a 33-foot finger pier that juts out from the vertex of the angle.  The north side of the finger pier faces Ekblom's property, whereas the south side faces Padron's property.  Padron's immediate predecessor in interest (Buchanan) granted Ekblom an easement relating to the finger pier, which provides in part:  "The parties agree that BUCHANAN, their heirs, successors and assigns, shall dock their boats on the <u>south</u> side of the dock and EKBLOM, their heirs, successors and assigns shall dock their boats on the <u>north</u> side of the dock." (emphasis in original).  In 2000, with the previous owner's permission, Ekblom installed a jet-ski lift on the finger pier, and since then, Ekblom has moored a 35 to 36-foot boat on the north side of the finger pier for over a decade without a navigational incident.

In August 2012, Ekblom filed an Environmental Resource Permit Application with the DEP to install the proposed cradle lift on the north side of the finger pier approximately two feet within Ekblom's property line in a location that <u>will allow straight-in ingress and egress.  The proposed cradle lift, which will</u>
construction of structures attached to the dock which are only suitable for the mooring or storage of boats (i.e., boatlifts).

basically consist of four pilings embedded into the man-made canal in the form of a rectangle with an aluminum mechanism that will lift Ekblom's boat in and out of the water, will not be attached to the finger pier.

Later that month, Celia Hitchins ("Ms. Hitchins"), an Environmental Specialist II with the DEP, notified Ekblom that an ERP is not needed for the proposed project because the four criteria set forth in Rule 40E-4.051(3)(b) were established.

Padron then petitioned for an administrative hearing challenging the DEP's determination and asserted that there are numerous disputed issues of fact, including whether the proposed cradle lift will "create a navigational hazard." At a hearing before the ALJ, the parties' experts testified as to their understanding of the term "navigational hazard" because it is not defined in Rule 40E-4.051. Ekblom's expert, Robert Camuccio, testified that a "navigational hazard" is "[s]omething . . . that the prudent mariner would have a difficult time navigating by safely." The DEP's expert, Ms. Hitchins, defined "navigational hazard" as "something that would cause a safety issue. It would cause some sort of precluding of other vessels' access." Similarly, Padron's expert, Edward Danti ("Mr. Danti"), defined "navigational hazard" as "something that either impedes or will cause hazard to vessels or other traffic in a particular location."

Ms. Hitchins testified that the proposed cradle boat lift would not be any

more intrusive than a boat moored in the same area. Similarly, Mr. Camuccio agreed that a portion of navigable water would be occupied regardless of how Ekblom's boat is secured—moored to the finger pier or placed on a cradle boat lift—and that occupying a portion of navigable water does not necessarily mean that a navigational hazard is created. Mr. Camuccio and Ms. Hitchins opined that the proposed cradle boat lift would not create a "navigational hazard," whereas Padron's expert, Mr. Danti, opined that it would.

In June 2013, the ALJ issued his recommended order. The ALJ recognized that the parties presented conflicting expert testimony as to whether the cradle boat lift will create a "navigational hazard," but he relied on the testimony presented by Ekblom's expert (Mr. Camuccio) and the DEP's expert (Ms. Hitchins) in finding that the cradle boat lift will not "create a navigational hazard." The ALJ recommended that the DEP approve its earlier determination that Ekblom's proposed cradle boat lift is exempt from ERP requirements because the four criteria set forth in Rule 40E-4.051(3)(b) were met. In addressing whether the proposed cradle lift will "create a navigational hazard," the ALJ made numerous factual findings, including that Ekblom has moored a 35 to 36-foot boat on the north side of the finger pier for the past twelve years without a navigational incident, but has since purchased a smaller boat; there are no channel markers in the middle of the basin; the basin's entrance is on the eastern end, not on the

western end where the finger pier is located; the inlet into the basin is small, and therefore, the size of boats that can enter the basin is limited; the water in the basin is calm; when Ekblom's boat is on the cradle boat lift, the boat will be in the same position where Ekblom has moored his boat to the finger pier; the finger pier is located in an area where only a few boats would navigate; Ekblom's neighbor to the northeast, Mr. Wright, docks a 30-foot boat on the seawall of his house, and he has not objected to the proposed cradle boat lift although he has to back his boat away from the seawall to maneuver into the basin; Ekblom will never have to navigate his boat on the south side of the finger pier; and Ekblom will not use his marginal dock to moor a boat once the proposed cradle boat lift is installed. Based on these findings and the expert testimony of Ms. Hitchins and Mr. Camuccio, the ALJ determined that "the more persuasive evidence supports a conclusion that the boat lift will not cause a navigation hazard. Even if it arguably causes a slight inconvenience, this does not rise to the level of a navigational hazard."

The ALJ also addressed a previous case before the DEP, Rosenblum v. Zimmet, 2007 WL 3087150, Case No. 06-2859 (Fla. DOAH Oct. 23, 2007), adopted, 2007 WL 4984551, Case No. DEP07-1347 (Fla. DEP Dec. 2007). The ALJ determined that, although there are similarities between Rosenblum and the instant case, Rosenblum is distinguishable.

Padron filed numerous exceptions to the ALJ's recommended order. In the

Final Order, the Secretary of the DEP denied all of Padron's exceptions, adopted the ALJ's recommended order in its entirety, and incorporated it into the Final Order. Padron's appeal followed.

"In an appeal from final administrative action, [an appellate] court reviews findings of fact made by the ALJ and adopted by the administrative agency to determine whether they are supported by competent, substantial evidence." Peace River/Manasota Reg'l Water Supply Auth. v. IMC Phosphates Co., 18 So. 3d 1079, 1082 (Fla. 2d DCA 2009); see also § 120.68(7)(b), Fla. Stat. (2013); Agency for Persons with Disabilities v. C.B., 130 So. 3d 713, 717 (Fla. 1st DCA 2013); U.S. Blood Bank, Inc. v. Agency for Workforce Innovation, 85 So. 3d 1139, 1142 (Fla. 3d DCA 2012); Payne v. City of Miami, 52 So. 3d 707, 711-12 (Fla. 3d DCA 2010). However, an appellate court reviews the agency's conclusions of law de novo. § 120.68(7)(d); C.D. v. Agency for Persons with Disabilities, 95 So. 3d 383, 384 (Fla. 3d DCA 2012); U.S. Blood Bank, 85 So. 3d at 1142; Peace River/Manasota Reg'l Water Supply Auth., 18 So. 3d at 1082. Importantly, an "appellate court affords great weight to an agency's construction of a rule that the agency is charged with enforcing and interpreting, but the court may depart from that construction if it is clearly erroneous." Collier Cnty. Bd. of Cnty. Comm'rs v. Fish & Wildlife Conservation Comm'n, 993 So. 2d 69, 72 (Fla. 2d DCA 2008); see also Summer Jai Alai Partners v. Dep't of Bus. & Prof'l Regulation, Div. Pari-

<u>Mutuel Wagering</u>, 125 So. 3d 304, 307 (Fla. 3d DCA 2013).

The primary issue raised in this appeal is whether the ALJ's finding—that the proposed cradle boat lift will not "create a navigational hazard"—which was adopted by the DEP, is supported by competent, substantial evidence. <u>See</u> § 120.57(1)(*l*), Fla. Stat. (2013) ("The [administrative] agency may not reject or modify the findings of fact unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law.").

Without rehashing the facts sets forth above, it is clear that the ALJ's finding that the proposed boat lift will not create a "navigational hazard" is supported by competent, substantial evidence. Despite the conflicting evidence, it was within the ALJ's province to reject Padron's expert's opinion and to accept the DEP's and Ekblom's experts' opinions. <u>See</u> <u>Stinson v. Winn</u>, 938 So. 2d 554, 555 (Fla. 1st DCA 2006) ("Credibility of the witnesses is a matter that is within the province of the administrative law judge, as is the weight to be given the evidence. The judge is entitled to rely on the testimony of a single witness even if that testimony contradicts the testimony of a number of other witnesses.").

Lastly, we address Padron's argument that the ALJ erroneously interpreted

8

Rosenblum. In Rosenblum, Zimmet filed an application requesting an ERP exemption to build a marginal dock and an elevator boat lift on his property. Rosenblum, 2007 WL 4984551 (Fla. Dep't Envtl. Prot. 2007). The DEP notified Mr. Zimmet that the proposed project was exempt from the need to obtain an ERP under Rule 40E-4.051(3)(c), which provides that an ERP is not needed to construct a private dock in "artificially created waterways where construction will not violate water quality standards, impede navigation, or adversely affect flood control." (emphasis added). As requested by Mr. Rosenblum, an administrative hearing was conducted before an ALJ. In its recommended order, the ALJ determined that Zimmet failed to establish that the proposed marginal dock and elevator boat lift would not "impede navigation" to and from the south side of the existing finger pier, and therefore, Zimmet was not entitled to an ERP exemption under Rule 40E-4.051(3)(c). Thereafter, the DEP adopted the ALJ order in its entirety and ruled that Zimmet was not entitled to the exemption.

In the instant case, Padron asserts that Rosenblum stands for the proposition that when access to one side of a pier is impeded, a "navigational hazard" is created as a matter of law. Rosenblum, however, does not stand for this proposition.

First, Rosenblum was decided utilizing the "impede navigation" standard set forth in Rule 40E-4.051(3)(c), not the "navigational hazard" standard in Rule 40E-

9

4.051(3)(b) that was applied in the instant case. Further, although the ALJ in Rosenblum found that Zimmet's proposed marginal dock and elevator boat lift would "impede navigation," the ALJ did not find that a navigational impediment necessarily creates a "navigational hazard." In fact, Rosenblum does not address whether there was a "navigational hazard" at all. Second, regardless of the applicable standard—"impede navigation" or "navigational hazard"—as the ALJ recognized, the Rosenblum case is "clearly distinguishable." The distinctions can be easily seen in the aerial photographs of the Rosenblum/Zimmet and the Padron/Ekblom properties as the configurations of the docks and lifts in the properties differ greatly. In Rosenblum, the ALJ's finding that the proposed marginal dock and elevator boat lift would "impede navigation" was based on the specific facts and configurations of the proposed marginal dock, the elevator boat lift, and the existing finger pier, which are clearly not present in the instant case. Thus, Rosenblum is not applicable and does not require a contrary finding.

The remaining arguments raised by Padron do not merit discussion. Accordingly, we affirm the DEP's Final Order.

Affirmed.

10