DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

J.J.,

Appellant,

v.

DEPARTMENT OF CHILDREN AND FAMILIES,

Appellee.

No. 2D22-3612

_____

December 27, 2023

Appeal from the Department of Children and Families.

Nicholas V. Castellano, II, of Buckman & Buckman, P.A., Sarasota, for Appellant.

Deanne C. Fields, Assistant General Counsel, Tampa, for Appellee.


KHOUZAM, Judge.

This is J.J.'s appeal of a final agency order entered by the Department of Children and Families (DCF) denying his request for an exemption from disqualification from employment in positions having direct contact with children or vulnerable adults. We affirm in all respects but write to explain our reasoning.

DCF was created to work with local communities to promote strong families and protect individuals. *See* § 20.19(1)(a), Fla. Stat. (2023). Its express primary mission and purpose is "to protect the vulnerable." *Id.* To that end, DCF has a role in preventing employees with certain disqualifying offenses from having contact with any vulnerable people. *See* § 435.06, Fla. Stat. (2023). As soon as an employer becomes aware that an employee has been even arrested for a disqualifying offense, the employer must remove that employee from contact with vulnerable people "until the arrest is resolved in a way that the employer determines that the employee is still eligible for employment." § 435.06(2)(b). The employer must terminate or reassign any personnel found to be noncompliant "unless the employee is granted an exemption from disqualification pursuant to s. 435.07." § 435.06(2)(c).

"In section 435.07, the legislature has not provided for an exemption as a matter of right, but has delegated to the Department the broad discretion to grant an exemption." *Heburn v. Dep't of Child. & Fams.*, 772 So. 2d 561, 563 (Fla. 1st DCA 2000). Moreover, "[a]n exemption from a statute, enacted to protect the public welfare, is strictly construed against the person claiming the exemption, and the Department [i]s not required to grant [the employee] any benefits under the exemption." *Id.* (citing *State v. Nourse*, 340 So. 2d 966, 969 (Fla. 3d DCA 1976)).

Under the statutory framework, it is the employee who has the burden to establish rehabilitation by clear and convincing evidence:

> Employees seeking an exemption have the burden of setting forth clear and convincing evidence of rehabilitation, including, but not limited to, the circumstances surrounding the criminal incident for which an exemption is sought, the time period that has elapsed since the incident, the nature of the harm caused to the victim, and the history of the

2

employee since the incident, or any other evidence or circumstances indicating that the employee will not present a danger if employment or continued employment is allowed.

§ 435.07(3)(a).  The legislature has further specified that DCF also "*may consider as part of its deliberations of the employee's rehabilitation the fact that the employee has*, subsequent to the conviction for the disqualifying offense for which the exemption is being sought, *been arrested for* or convicted of *another crime*, even if that crime is not a disqualifying offense."  § 435.07(3)(b) (emphasis added).

Crucially, "even if rehabilitation is shown, the applicant is only *eligible* for an exemption, not *entitled* to one."  *J.D. v. Dep't of Child. & Fams.*, 114 So. 3d 1127, 1131 (Fla. 1st DCA 2013).  Consequently, "[t]he agency head still has the discretion to deny the exemption notwithstanding the showing of rehabilitation, but he or she must articulate the rationale for doing so in order to facilitate judicial review." *Id.* (first citing *Heburn*, 772 So. 2d at 563-64; then citing *Phillips v. Dep't of Juv. Just.*, 736 So. 2d 118, 119 (Fla. 4th DCA 1999)).

Against this legal backdrop, we turn to the facts of this case.  Since 1989, J.J. has been employed with Sarasota County in the Parks and Recreation Department, where he has worked with children during the County's summer camp program and coached various children's sports teams.  He has also run programs for elderly adults, such as pickleball.

In 1998, J.J. pleaded guilty to grand theft, an offense that indisputably disqualifies him from any position in any program providing care to children, the disabled, or vulnerable adults.  *See* § 435.04(2)(cc), Fla. Stat. (2023); *see also* § 435.04(2)(r), Fla. Stat. (1997).  The charge arose out of a "money scheme" he participated in where he collected Florida Department of Law Enforcement funds designated for deceased individuals with the same name as him.  Ultimately, adjudication was

withheld, and J.J. was placed on probation for a period of ten years and ordered to pay restitution.

In 2005, J.J. was arrested for two counts of sexual battery upon a person twelve or older but less than eighteen by a person in familial/custodial authority—another disqualifying offense. *See* § 435.04(2)(s), Fla. Stat. (2023); *see also* § 435.04(2)(s), Fla. Stat. (2004). J.J. was working as a campus security guard for Sarasota County Schools, and a female student accused him of sexual battery. A probation violation report was filed alleging a violation of the condition prohibiting new law violations, and a hearing was held where J.J. was found to have violated his probation. His probation was extended an additional five years based on this violation, and he was forced to resign from his position as campus security guard. However, the State declined to prosecute the sexual battery charges.

The record is unclear why J.J. was permitted to continue working in his position with the County Parks and Recreation Department without any exemptions from statutory disqualification and why he did not apply for an exemption until 2021. DCF initially denied his request for exemption based on his serious prior offenses and failure to demonstrate rehabilitation. As later explained by the chief of the agency's background screening program, one of the reasons for the denial was DCF's determination that J.J. had tried to hide his sexual battery arrest from the agency.

J.J. challenged the denial, and an evidentiary hearing was held before an administrative law judge (ALJ). Following the hearing, the ALJ recommended that J.J.'s request for exemption be granted on the basis that he was rehabilitated and could be trusted around children and vulnerable adults. The ALJ concluded that "the determination that

4

Petitioner would be a harm to children or vulnerable adults because of [his arrest for sexual battery on a minor] is not supported by the evidence in the record. Specifically, there was no credible evidence as to what allegations supported the charge and arrest, or that the allegations were true." The ALJ also found that "there is no competent evidence Petitioner tried to hide the sexual battery arrest."

Following review of the ALJ's recommendation, DCF entered a final agency order rejecting the recommendation and denying J.J.'s request for exemption. DCF concluded that "[a]lthough Petitioner demonstrated rehabilitation, Petitioner's subsequent arrest for sexual battery on a minor and his dishonest description of why and how he violated probation in an affidavit he submitted to the Department render the Department's denial of Petitioner's exemption request a reasonable exercise of its discretion." J.J.'s appeal of the final agency order is now before us.

The crux of J.J.'s argument on appeal is that DCF improperly rejected the ALJ's findings of fact, specifically those regarding the sexual battery allegations and his candor regarding the related arrest. It is true that "neither an administrative agency nor a reviewing court may reject an administrative hearing officer's findings of fact, as long as those findings are supported by competent, substantial evidence in the record." *Maynard v. Fla. Unemployment Appeals Comm'n*, 609 So. 2d 143, 145 (Fla. 4th DCA 1992). But conversely, the agency may reject or modify an ALJ's findings of fact if "the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law." § 120.57(1)(*l*), Fla. Stat. (2022). Indeed,

5

the agency can even reject an ALJ's determination regarding an applicant's truthfulness if that determination is not supported. *See Fox v. Dep't of Child. & Fams.*, 262 So. 3d 782, 785 (Fla. 4th DCA 2018) ("The Department properly exercised its authority in rejecting the ALJ's conclusion that appellant did not lie on his exemption application, as this conclusion was not supported by the ALJ's findings of fact or competent substantial evidence." (first citing § 120.57(1)(*l*); then citing *Yerks v. Sch. Bd. of Broward Cnty.*, 219 So. 3d 844, 848 (Fla. 4th DCA 2017))).

We review the agency's final action denying an exemption under a deferential abuse of discretion standard of review. *A.P. v. Dep't of Child. & Fams.*, 230 So. 3d 3, 6 (Fla. 4th DCA 2017). "Discretion . . . is abused when the . . . action is arbitrary, fanciful, or unreasonable . . . ." *Id.* (alterations in original) (quoting *Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980)). We must determine if DCF's decision was unreasonable or outside the range of discretion delegated to it. *See Heburn*, 772 So. 2d at 563 (citing § 120.68(7)(e)1, Fla. Stat. (1997)). Here, we cannot say that DCF abused its wide discretion or acted unreasonably in rejecting the ALJ's factual findings regarding proof of J.J.'s probation violation for the new law violation of sexual battery on a minor and his candor about this issue.

With respect to the arrest for sexual battery, the ALJ found there was no nonhearsay evidence of the sexual battery allegations against J.J. to support DCF's fear that J.J. could be a harm to children. According to the ALJ, DCF's fear was solely based on a violation of probation report, the contents of which were double or triple hearsay. Although the ALJ found that J.J. had entered an admission to violating his probation, she concluded there was no clear evidence of why he was alleged to have

6

violated his probation in the first place.  He was never prosecuted for sexual battery, and there was no credible evidence that the allegations against him were true.

DCF reasonably rejected these findings.  First, even disregarding the hearsay statements within the violation report, the report itself still establishes that J.J. was arrested based on two new alleged law violations of sexual battery on a minor which resulted in an allegation that he violated his probation by failing to refrain from breaking the law.  Whether or not J.J. actually committed or was found guilty of those disqualifying crimes, DCF was expressly authorized to rely upon the mere fact that he was arrested for them.  *See* § 435.07(3)(b) ("[DCF] may consider as part of its deliberations of the employee's rehabilitation the fact that the employee has, subsequent to the conviction for the disqualifying offense for which the exemption is being sought, been arrested for . . . another crime, even if that crime is not a disqualifying offense.").

Further, the ALJ's findings about the sexual batteries ignored two nunc pro tunc court orders admitted into evidence as well as J.J.'s own testimony at the hearing.  The order modifying J.J.'s probation reflects that his probation had been extended by five years to fifteen years, and he was ordered to have no contact with the victim, no unlawful or inappropriate contact with any minor, or any one-on-one training with any female minor (with one named exception).  The order on violation of probation further states expressly that J.J. did not admit to the violation but rather was found in violation following a hearing.  He was ordered to complete a psychological evaluation for sexual offender conduct and complete any treatment found necessary.

7

At the hearing before the ALJ, J.J. was confronted with these exhibits and he admitted that he was found in violation of his probation based on his arrest for sexual battery and that an evidentiary hearing was held, where he was represented by an attorney and the victim testified. He denied the allegations of sexual battery detailed in the violation report. But he admitted that his probationary term was extended to fifteen years and that there were several modifications directing him not to have contact with minors. He admitted that he was ordered to complete a psychological evaluation for sexual offender treatment but explained that the evaluation indicated that such treatment was not needed. He admitted that he was forced to resign from his employment with Sarasota County Schools as campus security.

Considering the "entire record," which includes these orders and testimony along with the violation report, there was indeed sufficient nonhearsay evidence to support DCF's rejection of the ALJ's findings and recommendation regarding the sexual battery allegations. *See* § 120.57(1)(*l*); *see also* 120.57(1)(c) ("Hearsay evidence may be used for the purpose of supplementing or explaining other evidence, but it shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions."). Apart from the arrest itself, J.J.'s probation was extended in duration by fifty percent and modified to include new sex-offense-related requirements based on the allegations following an evidentiary hearing. The order imposing these new conditions expressly refers to the affidavit of violation alleging new law violations in the form of sexual batteries on a minor and states that the court "found [J.J.] in violation of his probation," which requires proof of guilt by a preponderance of the evidence. *See Bowser v. State*, 937 So. 2d 1270, 1271 (Fla. 2d DCA 2006) ("The proper standard for finding a

law violation is whether a preponderance of the evidence establishes that the probationer committed the charged offense.").  Because there was nonhearsay evidence in the record to support DCF's fear that J.J. could be a harm to children based on the sexual battery arrest and the resulting probation violation, it was reasonable and not an abuse of discretion for DCF to reject the ALJ's finding to the contrary.

As to J.J.'s candor, the ALJ found that there was no evidence that J.J. tried to hide his arrest for sexual battery because he had referenced court documents related to the violation of probation in his exemption application and had convincingly testified at the hearing that the allegations against him were false.  The ALJ pointed out that there was no indication that DCF had requested more information regarding the sexual battery allegations from J.J. and that he had refused to provide such information.

DCF also reasonably rejected these findings.  J.J. represented in his affidavit supporting his exemption application that the violation of probation was the result of his failure to pay restitution—which the record reveals is not true.  Neither his affidavit nor his statement in support of his application mention anything about the allegations of sexual battery on a minor, the arrest, or the modification of his probation based on these allegations.  Although he did provide DCF with documents revealing some of the information, they were buried within the voluminous attachments in support of his application with nothing in his application or statements disclosing or directing DCF's attention to this obviously serious and statutorily relevant matter.

Clearly contradicting his representation in the affidavit, J.J. testified at the hearing before the ALJ that the violation of probation was *not* based on failure to pay restitution; instead, when confronted with the

9

sexual battery allegations, J.J. admitted they were the cause. The chief of DCF's background screening program also testified that, although J.J. had provided the arrest report with his application, what caused her concern was J.J.'s failure to address the accusation and arrest in his statement submitted with his application. We are not aware of any requirement that DCF request additional information, and as discussed above it was J.J. who had the burden to prove rehabilitation. *See* § 435.07(3)(a). Because there was record evidence suggesting that J.J. had not been fully candid about his sexual battery arrest in seeking an exemption from the statutory disqualification, it was reasonable and not an abuse of discretion for DCF to reject the ALJ's finding to the contrary.

All of that said, we have some concerns about gaps in the record before us. The evidence below leaves several questions unanswered, including the following: Why was J.J. permitted to work for the County for so long despite his disqualifying conviction and subsequent arrest? Why did J.J. wait until 2021 to file for an exemption? Why did the State decline to prosecute the new law offenses for which J.J. was found in violation of his probation, especially when they are as serious as sexual battery on a minor and an evidentiary hearing was apparently held where the victim testified? Why were the orders finding J.J. in violation of his probation and modifying his probation entered nunc pro tunc several years after the fact? Although none of these questions affect the outcome of this particular case for the reasons explained above, we caution DCF to consider the impact of such unanswered questions on future cases involving denial of recommended exemptions.

Ultimately, given the unique circumstances of this case as well as DCF's mission of protecting children and vulnerable persons and the agency's wide discretion to uphold that purpose by preventing potentially

harmful employees from working with them, it was reasonable and not an abuse of discretion for DCF to decline J.J.'s request for an exemption. Although *eligible* for an exemption, J.J. was never *entitled* to one.  *See J.D.,* 114 So. 3d at 1131.  Accordingly, we affirm DCF's final agency order denying J.J.'s request for an exemption.

Affirmed.


CASANUEVA and ROTHSTEIN-YOUAKIM, JJ., Concur.


———————————————


Opinion subject to revision prior to official publication.